SETH HANCE LINTHICUM et al.,

*vs.*

WASHINGTON, BALTIMORE AND ANNAPOLIS
ELECTRIC RAILROAD CO.

*Specific performance: compensation decreed instead of—.
Equitable jurisdiction: complete relief.  Covenants
running with the land: conditions and burdens;
liability of assignee.  Railroads: public or pri-
vate crossings; covenants as to—.
Contracts: carelessness;
when no defense.*

A covenant to run with the land must relate to something then existing; covenants relating to something in the future are personal merely.                                              p. 268

But a vendor may impose restrictions, on land conveyed by him, for the benefit of his remaining land, in such a manner, as to be binding, not only on the vendee, but on the assignees of the vendee, even though such restrictions are not, strictly speaking, covenants running with the land.                  p. 268

Deeds for rights of way to railroad companies are assets, and pass to their grantees or mortgagees, subject to the conditions and burdens contained therein.                          p. 268

Where a part of the consideration in a deed was the performance of certain covenants and conditions, relating to the construction and maintenance, by the grantee railroad company, of certain crossings, at points indicated on a plat, with certain grades, etc., the covenant is obligatory upon a railroad, the successor of the grantee.                                p. 270

Such a covenant is a binding obligation upon the assignee, and remains a subsisting obligation, until performed or released by agreement, or until the satisfaction of an award of compensation for the non-performance.                              p. 269

Where a deed conveying land, for railroad construction, defines, and shows on a plat, the strip of ground where crossings are to be located, and, in stating the covenants or conditions, as to the crossings, specifies the grades, etc., the agreement can not be held void for uncertainty, merely because it was not provided whether the crossings should be above or below grade.
p. 270

Not every agreement that is precise, definite and certain will be decreed to be specifically performed.  p. 270

The remedy of specific performance rests in the sound judicial discretion of the Court, and "if to enforce an agreement specifically would do one party great injury, and the other comparatively little good," the specific execution should not be decreed.  pp. 270, 272

In cases where the public interest is concerned, courts do not consider covenants of railroads relating to crossings, stations, etc., as binding in perpetuity, even though the party injured by the failure to observe the covenants may be entitled to damages for the breach; but such contracts, when of private concern, may be enforced.  p. 269

One who enters into a contract carelessly can not set up his own inattention as a defense, as constituting impossibility of performance.  p. 271

When equitable jurisdiction attaches, it will be retained so as to give full relief, even as to matters with regard to which equity would ordinarily have had no jurisdiction.  p. 273

Under a bill for specific performance, equity can not make a contract, other and different from that which the parties had made, and decree its performance.  p. 275

Where, upon a bill for the specific performance of a contract to build a private crossing across a railroad, it appeared that its construction, as called for, would be extremely costly for the railroad, and of small benefit or use to the complainant, the specific performance of the contract should not be decreed.
p. 275

In such a case, the Court should ascertain the compensation, proper to be awarded to the complainant for the deprivataion

suffered, and that would be suffered, by reason of the non-per-
formance.                                                    p. 275

Or opportunity should be afforded for the parties to adopt
other methods for the crossing.                              p. 275

*Decided December 2nd, 1914.*

Appeal from the Circuit Court of Baltimore City. (DUFFY,
J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE.
BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CON-
STABLE, JJ.

*S. S. Field,* for the appellant.

*George Weems Williams* and *Frank Gosnell,* for the appel-
lee.

STOCKBRIDGE, J., delivered the opinion of the Court.

The bill of complaint which was filed in this case con-
tained four prayers for relief; the first was for the correction
in the record of a plat, constituting a part of a deed dated
March 15, 1907, and the propriety of such correction was
conceded by the answer; the second was to require the specific
performance of a covenant contained in the deed of March
15, 1907; the third, for compensation to the plaintiffs for the
violation of the covenant, and the fourth, for general relief.

The material facts in the case are that: "The Baltimore
and Annapolis Short Line Railroad," which will hereinafter
be referred to for sake of convenience as "The Short Line,"
was prior to the 15th of March, 1907, operating an electric
railroad between Baltimore and Annapolis, and its route in
part was along and over a right of way which had been
acquired from the plaintiffs, or their predecessors in title.   In
the year 1906 and early part of 1907, the construction of an
electric railway between the cities of Baltimore and Wash-

ington and Annapolis was begun by a corporation which had been formed for that purpose, bearing the name of the Washington, Baltimore and Annapolis Electric Railway Company. The route to be followed by this road, as laid out by the engineers, involved a double crossing of the tracks of the Short Line, as they existed at that time. Negotiations were entered into between the W. B. & A. Ry. Co. and certain members of the Linthicum family which culminated in certain conveyances bearing date March 15th, 1907. The effect of these was to shift the location of the Short Line tracks a little to the south and east of the projected route of the W., B. & A. Ry. Co. over land which was acquired from the Linthicum family, thus enabling the W., B. & A. Ry. Co., partly over the former right of way of the Short Line and certain additional land acquired from the Linthicums, to construct a route avoiding a crossing of railway tracks by one road over the other. This arrangement was consummated by two deeds, one a conveyance from Laura E. Linthicum, W. Hampton, M. Delmah and Seth Hance Linthicum to the Terminal Real Estate Company, of the land for the right of way to be used and occupied by the Short Line under its re-location; and the other from the same grantors to the W., B. & A. Ry. Co. of the additional land needed by that corporation for the construction of its railway; this deed was executed for an expressed consideration of $1,450, and the performance of the covenants and conditions contained in the deed, the two most important of which related to crossings and the establishment of a platform station. The covenant with regard to the crossings was that the railroad company was "to immediately construct and maintain three crossings of not less than 20 feet on the surface over its right of way and over the Baltimore and Annapolis Short Line Railway at the places indicated on the plat hereto attached and crossing said right of way on the property hereby conveyed and on the property conveyed by the parties of the first part to the Terminal Real Estate Company of Baltimore City by deed of even date herewith, with easy approaches thereto of not more than 4%

LINTHICUM vs. W. B. & A. ELEC. RD. CO.  267

Md.]                    Opinion of the Court.

grade and with a roadbed of not less than 20 feet wide in good condition." In the deed of the same date from the same grantors to the Terminal Real Estate Company, the grantors reserved "to themselves, their heirs and assigns over the described lot a private crossing 20 feet wide at the point shown upon said plat," referring to the plat attached to the deed to the W., B. & A. Ry. Co. The rights, and of course restrictions upon those rights, so granted to the Terminal Real Estate Company passed by conveyance from it to the Short Line.

The W., B. & A. Electric Ry. Co. became insolvent, and was directed to be sold under a decree of the Circuit Court of the U. S. for the District of Maryland. At this sale the property was purchased on behalf of a corporation bearing the name of the W., B. & A. Railroad Co., a corporation having practically the same executive officers as the insolvent Railway Company, but with some changes of stockholders and bondholders from those of the Railway Company.

By an agreement made between Wade Hampton and Seth Hance Linthicum and either the Railway or Railroad Company, of the three crossings covenanted for in the deed of March 15th, 1907, two were consolidated to make one crossing 40 feet in width, in place of two of 20 feet each, and the third crossing has never been constructed by either the Railway or Railroad Company. It is for the specific performance of the covenant in its relation to this third crossing that this present bill was filed, with the alternate prayer for an award of compensation should the Court refuse a decree for specific performance.

The Short Line was not made a party to this proceeding, and the defendant urges this omission as a defense to the present action. This contention is closely connected with another, viz., the covenant contained in the deed is not a covenant running with the land, and that by reason of the sale of the Railway Company's assets, the merely personal covenant of the Railway Company is not binding upon the Rail-

road Company, and that, therefore, the plaintiffs have no enforceable right against the defendant as to its own right of way, nor can they require of it the construction of a crossing over the line of another company which is not a party to the proceeding. As to the latter proposition the legal position is that under the doctrine in *Spencer's case,* 5 Coke, 16, and which has been recognized and adopted as the law in most jurisdictions in this country, a covenant to run with the land must have relation to something already in existence, and that where it relates to something to be done in the future, it is a personal covenant merely and not a covenant running with the land. It is undoubtedly true that in the strict, technical sense the covenant contained in the deed from the Linthicums to the Railway Company was not a covenant running with the land, but as was said in the case of *Wood* v. *Slehrer,* 119 Md. 143: "A vendor may impose restrictions on land conveyed by him for the benefit of his remaining land in such a manner as to be binding not only on the vendee but his assigns, though they are not strictly speaking, covenants running with the land." And to the same effect were the decisions in *Worthington* v. *Lee,* 61 Md. 533; *Newbold* v. *Peabody Heights Co.,* 70 Md. 495; *Russell* v. *Zimmerman,* 121 Md. 328, 341. The same rule is stated in *Lewis on Eminent Domain,* section 477, and sustained by the authorities there cited, when that author says: "Agreements by a railroad company to build crossings or to locate and build a depot or to do other things for the benefit of the grantor may be specifically enforced." And in section 478 the author says: "Deeds and contracts for rights of way to railroad companies are assets and pass to the grantee or mortgagee of such companies, but *subject to such burdens and conditions as are contained therein.*"

In view of the weight of authority it cannot now be held that the covenant between the Linthicums and the W., B. & A. Railway Co. is not obligatory upon its successor, the Railroad Company.

Nor is there greater force in the contention as to the omission to make the Short Line a party. The entire transaction of March 15th, 1907, was one arranged by the W., B. & A. Ry. Co. for the purpose of facilitating the construction of its line, the deed to the Terminal Company made an express reservation of a private crossing, which was binding upon its assigns and, therefore, binding upon the Short Line, and the obligation imposed by the deed to the W., B. & A. Ry. Co. being likewise binding upon its successor, remains a subsisting obligation until performed or released by agreement of the parties, or the satisfaction of an award of compensation for non-performance. The rule applicable here is that laid down in *Joy* v. *St. Louis,* 138 U. S. 1, and *May* v. *LaClaire,* 11 Wall. 217.

The lower Court dismissed the bill in this case practically upon two grounds: the uncertainty of the contract, and the public service character of the Railroad Company. With neither of these conclusions is this Court able to agree. There is a well recognized distinction between crossings intended for the use of the general public and those which are private crossings, and Courts will refuse to grant an order in regard to a public crossing where it is deemed that public interest is better subserved otherwise, while they will require such performance with regard to that which is matter of private concern only. So in *Whalen's case,* 108 Md. 11, where the B. & O. R. R. Co. had, in 1848, agreed to maintain a siding, turnout and station, and did so erect and maintain it for sixty years, and then by a relocation of its line abandoned the former site, this Court refused to order the further maintenance of the station which had been provided for in 1848. In cases where the public are concerned Courts decline to recognize as binding in perpetuity a covenant entered into by a railroad company, though the party injured thereby may have a right of action for damages for the failure or discontinuance of the right which had been granted. *Md. & Pa. R. R. Co.* v. *Silver,* 110 Md. 510; *Marsh* v.

*Lehigh R. Co.,* 64 At. 366; *Speer* v. *Erie R. R. Co.,* 68 N. J. Eq. 615; *Tex. Pac. Ry. Co.* v. *Marshall,* 136 U. S. 393.

With regard to the uncertainty of the contract, the conditions set out in the deed of March 15th, 1907, are connected with a strip of land which is fully described in the deed and shown on a plat annexed to the deed and recorded or intended to be recorded with the deed, as an integral part of it, upon which plat the crossings provided for in the covenant are also shown. The grade for the crossing and the approaches to it are specified, and it is not essential that the deed or covenant set forth that the crossing shall be at, under or above grade. In the case of *Speer* v. *Erie R. R. Co.,* the agreement was that the Railroad Company would give the grantor a suitable and convenient crossing where the grantor might direct, and this was held to have been sufficiently definite. No objection can, therefore, be successfully set up as to the maintenance of the present bill for specific performance upon the ground of uncertainty in the contract.

But it is not every agreement, no matter how precise, definite and certain its terms may be, which a Court of Equity will require to be specifically performed. The remedy of specific performance is one to be awarded or refused by an Equity Court in the exercise of a sound judicial discretion, and "if to enforce specifically an agreement would do one party great injury and the other comparatively little good the chancellor will not require its execution." *McDowell* v. *Biddison,* 120 Md. 118. A very similar case to the present one is that of *Post* v. *W. S. R. R.,* 123 N. Y. 581, where the West Shore R. R. Co. had entered into a somewhat similar agreement, and the road becoming insolvent was sold—the agreement not having been performed, and the covenant was held binding upon the purchaser, but specific performance was not decreed because of its impracticability, and in the case under consideration the impossibility of performance of the covenant is the defense chiefly relied upon.

This leads to a consideration of the facts with a view to determining the reasonableness of requiring a specific per-

formance of the covenant of the deed.   Under the covenant
the crossing to be provided was to have been constructed with
approaches having a grade of not more than 4%.   Upon one
side of the road it was the apparent intention of both parties
that the approach should extend to the public road or boule-
vard, which at the point of this agreed private crossing was
distant only some 25 feet from the line of the right of way of
the Short Line, while on the other side, to the west of the
W., B. & A. line, after a slight depression for a ditch, there
was a hill rising quite abruptly for a considerable distance.
Whether it would have been possible before any grading at all
had been done to construct an approach from the Boulevard
to the eastern side of the tracks of the Short Line, at the
specified grade of not exceeding more than 4%, is not entirely
clear, but the impression gained from all of the evidence is
that it would not.   If this is correct then the literal per-
formance of the covenant was impossible, both at the time
of its being entered into and has been continuously ever
since.   The insertion of the requirement that the crossing and
approaches should not have a grade exceeding 4% seems to
have been largely guess work by the parties, not the result of
accurate engineering calculations.   If the defendant's prede-
cessor saw fit to enter into covenants thus carelessly, it could
not have been permitted to set up as a defence its own inatten-
tion or negligence in so important a matter, as constituting
an impossibility of performance, and its successor can in this
regard stand in no stronger or better position.   The testimony
shows that the W., B. & A. R. R. road-bed at the point desig-
nated for the crossing was approximately a foot higher than
the road-bed at that point of the Short Line before the W., B.
& A. was built, and also that the W., B. & A. road-bed at the
same point was slightly higher than the road-bed of the Short
Line.   It is apparent, furthermore, that for a grade crossing,
an approach from the Annapolis Boulevard would involve a
grade of about 8%, double that specified in the covenant, a
grade highly undesirable for teams having to cross the rail-
way, while on the west side no distance for the approach was

named, or necessarily resulted from the natural configuration of the ground, but it clearly appears that by reason of the depression already alluded to, an approach with a grade of 4% for a short distance at least could have been constructed. That which is insisted upon by the plaintiff is that specific performance can be had in either one of two ways: a depression of the tracks of both the Short Line and the W., B. & A., to an extent which would give a 4% grade; or an elevation of those tracks and the putting in of an underneath crossing, so that the grade would have come within the provisions of the covenant. It is of course true that as a mere engineering proposition either of these could be done; but it is also true that either the elevation or depression of the tracks would have to be distributed in both directions for a considerable distance, and with roads in operation, as both of these are, the cost by either method would be very great. This cost is variously estimated at from $20,000 to $100,000, for the depression of the tracks, and from $6,700 up to an indefinite amount, for the elevation of them.

The purpose to be served by the installation of the crossing is the development, for suburban residences, of a track of 58 acres belonging the the plaintiffs, having a present probable value of a little in excess of $15,000. What its value might be under a scheme for suburban development is largely problematical and dependent upon a wide variety of contributing elements. It will thus be seen that the cost of awarding a decree for specific performance would involve an expenditure upon the part of the defendant of an amount nearly equal to, if not greater than, the value of the interest of the plaintiffs in their land, and thus the case falls within the line of cases which hold, that specific performance should not be decreed, where the injury to one party is as great or greater than the benefit to accrue to the other. *McDowell* v. *Biddison,* 120 Md. 118.

The contention of the defendant is, that if the plaintiffs have any remedy, that remedy is by an action at law for damages for a violation of the covenant, and that it cannot

be asserted in the present case in equity; and reference is made to the fact that prior to the insolvency of the W., B. & A. Ry. Co., a suit at law for damages had already been instituted by the plaintiffs. It is of course true that as between the original parties to the agreement, the plaintiffs would have had a right to proceed either at law for damages, or by bill in equity for specific performance; but we are not now dealing with a case between the original parties to the contract, and while it is not necessary to now decide, it is by no means clear that an action at law would give the plaintiffs the relief to which they are entitled. It has long been recognized in this State that where in a proper case, equitable jurisdiction has once attached it will be retained to the end, to give the parties seeking its aid full relief, even as to matters with regard to which it would not originally have had jurisdiction. *Popplein* v. *Foley*, 61 Md. 382; *Miller's Eq.*, sec. 669; *Shipley* v. *Fink*, 102 Md. 220. And to the same effect are, *Wilson* v. *R. R. Co.*, L. R. 9, Ch. 279; cited in *Frey on Specific Performance*, sec. 1310; *Speer* v. *Erie R. R., supra*. The test in all of these cases is, whether the Court in the particular case, ought in the exercise of its discretion to award specific performance, and if the case established is such a one, then if for any reason specific performance is refused, compensation for the damage or injury suffered may be awarded in lieu thereof, instead of compelling the party at additional cost to go into another forum and there litigate the same question. The damages claimed in this case were two-fold in their nature; namely, the damage alleged to have resulted to the plaintiffs between the time of the execution of the deed of March 15th, 1907, and the time of the institution of this proceeding; and, second, the permanent injury to the plaintiff's property by reason of being deprived of the crossing. In regard to the first of these, it is to be said that there was no adequate evidence upon which either a Court or a jury could have made any award for this character of damage; it did not appear that the plaintiffs had been forced to sell any of the property at less figure than they would have sold

it if the crossing had been there, while as to the plaintiffs' own use and occupation of this property, it bounded on three roads—a county road, the Hammond's Ferry road and Maple avenue, and there was no adequate evidence that they had been put to any added inconvenience at all, by reason of the lack of this crossing.

With regard to the second element of damages, the estimates varied considerably, from $650 to $9,000—the plaintiffs themselves placing the damages at $6,000, while their expert witnesses gave higher figures. The case presents practically the same elements as are involved in a condemnation case, namely, the determining upon conflicting evidence of what is fair and just compensation, and the important question is, how shall this determination be made? The Court of Equity having jurisdiction of the subject-matter, may of course, in the exercise of its customary jurisdiction, fix the amount of compensation to be paid. In some cases an issue has been directed to be framed for submission to a jury for the determination of the damage; but in England the more usual course has been to direct an inquiry in Chambers, as to the sum to be awarded or allowed, and this is for the reason stated by Mr. *Frey* in his work on *Specific Performance,* sec. 1314, that "It seems desirable that the assessment of damages should, wherever practicable, take place at the trial, without any separate inquiry, for otherwise the parties are virtually put to the expense of two trials of the same question. In one case, *Cornwall* v. *Henson,* 1900, 2 Ch. 290, 305, the damages were assessed by the Court of Appeal; but that apparently is the only case in which an appellate Court has undertaken to decree damages or compensation, and the better practice would seem to be that such compensation should be assessed and decreed by the chancellor upon evidence adduced before him, either during the progress of the trial of the case or upon special inquiry after determination that the case presented is a proper one in which to allow compensation.

A considerable amount of the testimony in this case was with regard to a crossing suggested by Colonel Wickes, an

engineer placed on the stand by the plaintiffs.   His proposal
for a crossing was to construct it as a grade crossing, over
the rights of way of the two railroads, and then upon the
eastern side, or side toward the boulevard, instead of making
the approach a continuous straight line with the crossing, to
curve it and bring it down to the boulevard with a 4% grade,
thus slightly extending the length of the approach, and so
enabling the stipulated grade to be obtained.   That presented
a proposition, however, which appears to have been entirely
novel to the parties to this proceeding at the time when it
was presented, and is not one which the Court can decree,
for the reason that it would amount to a new contract between
the parties, involving a very different method of approach,
and which, however it might commend itself to the parties
as a possible solution of an unfortunate situation, is not a
matter upon which their minds had ever met, and the Court
can not, under a bill for specific performance, make a contract
for the parties other and different from that which they
themselves had made, and then decree its enforcement.

From what has been said it follows, that the decree of the
Circuit Court of Baltimore City, from which the appeal in
this case was taken, must be reversed, and the cause remanded
for the ascertainment by the Chancellor of the compensation
proper to be awarded to the complainants for the deprivation
they have suffered, and will continue to suffer, by reason of
the non-construction of the crossing; such determination to
be made upon the evidence already taken, but with leave to
either party to take further proof, if they so desire, upon
the question of the amount of compensation to be awarded,
and with the opportunity to them, if they shall so agree, to
adopt a crossing in the manner suggested by the witness
Wickes, or such other form as the parties hereto may agree
upon.

> *Decree reversed and case remanded for fur-*
> *ther proceedings in accordance with this*
> *opinion, with costs to the appellants.*