SEYMOUR SMITH, ET AL., TRUSTEES OF WILSON M. E. CHURCH,

*vs.*

ENOS MYERS.

ENOS MYERS

*vs.*

SEYMOUR SMITH, ET AL., TRUSTEES OF WILSON M. E. CHURCH.

*Injunctions and suits for specific performance: equitable considerations; great cost to defendant for trifling injury.*

The specific enforcement of an agreement will not be decreed when the injury to the defendant would be far greater than the benefit which the plaintiff might derive from the result; and where the loss, if any, could easily be compensated for by damages.       p. 67

In a suit for an injunction which seeks to accomplish all the purposes of a decree for specific performance, such suit is subject to the principles that apply to the latter remedy.       p. 67

*Decided January 12, 1917.*

Cross-appeals from the Circuit Court for Baltimore County. In Equity. (McLANE, J.)

The facts are stated in the opinion of the Court.

The causes were argued before BOYD, C. J., BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*T. Scott Offutt* for Enos Myers.

*Osborne I. Yellott* and *J. LeRoy Hopkins,* for Seymour Smith, et al., Trustees, etc.

URNER, J., delivered the opinion of the Court.

The bill of complaint in this case alleges in effect that the plaintiff is a member of Wilson's Methodist Episcopal Church, located near Long Green Postoffice, in Baltimore County; that the defendants, as trustees of the church, own a small tract of land, adjacent to the church building, which has been devoted to cemetery purposes; that in the month of July, 1914, the plaintiff purchased a lot in the cemetery from an agent of the trustees, duly authorized to represent them in the sale of burial lots; that the lot selected by the plaintiff was partly covered by an old church building, which had not been used as a church for many years and was in a dilapidated condition, but the plaintiff was assured by the agent that the old building was to be removed and the ground occupied by it used as part of the cemetery, and that relying upon this assurance the plaintiff bought the lot for the sum of twelve dollars and caused to be interred there the body of his mother-in-law, whose death was the immediate occasion of the purchase. It is then averred that some of the trustees have recently announced their intention not to raze the old church building, but to remodel and repair it, and to use it as an amusement hall to be rented out for various purposes of entertainment, and it is charged that this, if permitted, will not only deprive the plaintiff of a portion of the lot he bought and paid for, but will be a serious invasion of the privacy and quietude he is entitled' to have maintained for the resting place of his dead. It was further alleged that the plaintiff has protested against the proposed action of the trustees, but without avail. An injunction was prayed by the bill to restrain the trustees from remodeling or repairing the old building, and from using it as a place of public entertainment or amusement, and to enjoin them to raze and remove the building from the portion

of the plaintiff's lot which it occupies. The Court below granted a preliminary injunction for the purposes mentioned in the prayer for relief, except as to the removal of the building.

In their answer to the bill of complaint the trustees denied that the plaintiff's burial lot had been sold to him upon the assurance that the old building would be removed, and they aver that their agent for the sale of lots in the cemetery had no authority to make such a promise. They state that the lot sold to the plaintiff is twenty feet wide and twenty-four feet long, except for a small triangular strip, eighteen inches in its greatest breadth, and eighteen and a half feet in length, which is cut off by the building in controversy. The answer describes the building as a solid stone structure, which it would cost at least fifteen hundred dollars to replace, and several hundred dollars to remove. While it is conceded to be in a state of disrepair, it is used for the housing of an acetylene gas plant which lights the new church, and also occasionally for church suppers, entertainments and lectures under the supervision of the church authorities. The trustees admit that it is their purpose to repair and remodel the old building, and that this work was in progress when the preliminary injunction was issued, but they deny that they had, or now have any intention of renting out the building as an amusement hall, and assert that it will continue to be used for the "purposes of holding church entertainments, suppers, lectures, etc., all of which will be conducted under the direct supervision and authority of the trustees, and will be of such a character as can in no way wound the feelings or sense of propriety of any person of ordinary sensibilities."

The testimony offered in the case was in conflict upon the question as to whether the agent who sold the lot to the plaintiff stated positively that the old building would be removed, or merely expressed the belief that this would sometime be done, but there is no contradiction whatever upon the point that the agent was in fact unauthorized to bind the trustees to such an agreement. The proof is conclusive that

the agency was limited to the care of the cemetery and the sale of burial lots. There was nothing in the terms or circumstances of the employment and service of the agent to justify the inference that he was empowered to sell any part of the ground under the old church or to contract for its removal. This being the clear effect of the evidence, we can have no hesitation in holding, with the Court below, that there is no ground upon which the plaintiff's demand for the removal of the building can be sustained. Even if it be assumed, though we do not so decide upon the evidence, that the plaintiff was induced to make the purchase by a definite promise by the agent that the building should be taken away, and even if such an assurance could be held to have been within the apparent scope of the agent's authority, it would be a most unusual and unwarranted exercise of the equitable powers of the Court to specifically enforce the agreement by requiring the removal of a fifteen hundred dollar building in order to release a disputed fraction of a twelve dollar lot, instead of awarding the compensation in damages which could be so readily measured and so completely afforded. In fact, the trustees offered before the suit to increase the width of the plaintiff's lot in order to more than compensate for the slight reduction in its length of which he complains. A suit for an injunction which seeks to accomplish all the purposes of a decree for specific performance is subject to the principles which apply to an application for the latter remedy, and it is a settled rule that specific enforcement of an agreement will not be decreed when, as in this case, the injury to the defendant would be far greater than the benefit which the plaintiff might derive from that result. *McDowell* v. *Biddison,* 120 Md. 127; *Phoenix Pad Co.* v. *Roth,* 127 Md. 543; *Linthicum* v. *W. B. & A. Elec. R. Co.,* 124 Md. 272; *Whalen* v. *B. & O. R. R. Co.,* 108 Md. 23; *Fralinger* v. *Cooke,* 108 Md. 688.

The decision that the plaintiff is not entitled to a mandatory injunction for the removal of the building naturally leads to the further conclusion that its owners ought not to

be denied the right to repair and remodel it in order that it may be preserved and used for its appropriate objects. Indeed there appears to be no objection by the plaintiff to the repair and improvement of the building, except upon the theory that it ought not to remain standing, and that the uses to which it is to be devoted will disturb the seclusion of the adjacent cemetery. The Court below was clearly right in dissolving the preliminary injunction so as to allow the work on the building to proceed, and we think it might also properly have rescinded the restraining order in its entirety. The only remaining effect of the injunction, as continued and made permanent by the final decree, is to prohibit the trustees from using the old building "as a place of public entertainment or amusement for any other than proper church purposes." The intention to use the building for any other objects was expressly disclaimed by the trustees both in their answer and in their testimony. It has not heretofore been used for any inappropriate purpose, and no action has been taken for the adoption of a different policy in the future. In *Whalen* v. *Delashmutt,* 59 Md. 252, it was said by JUDGE ALVEY to be "a well settled principle in the practice of injunction, that where a defendant asserts positively that it is not his intention to do a certain act, or to violate any particular right asserted by the plaintiff, and there be no evidence to show to the contrary, the Court will not interfere by injunction. It will neither grant nor continue an injunction in the face of such disclaimer. *Woodman* v. *Robinson,* 2 Sim. (N. S.) 204, 210; *Fooks* v. *Wilts, Somerset & Weymouth R. Co.,* 5 Hare, 199, 202; *Hanson* v. *Gardiner,* 7 Ves. 305; *Kerr on Inj.,* 198."

An appeal was taken by the defendants on the ground that the prohibition in the decree is unnecessary, and the plaintiff appealed because the effect of the preliminary injunction was reduced. The decree will be reversed in so far as it continues the injunction, but in other respects it will be affirmed.

> *Decree affirmed in part and reversed in part, the appellant in No. 85 to pay the costs of both appeals.*