# THE TEXAS COMPANY

### *vs.*

# THE UNITED STATES ASPHALT REFINING COMPANY ET AL.

*Specific Performance—Incomplete Agreement—Mandatory Injunction.*

In a suit for the specific performance of an alleged contract between owners of adjoining tracts, for the extinguishment by releases of certain mutual easements in parts of the two tracts, constituting a reserved area, *held* that as to the location of a new right of way for use by both parties, which was an essential of the alleged contract, no agreement had been reached, and consequently specific performance must be refused. p. 356

A court of equity will not specifically enforce an agreement unless it is definite and certain in all its provisions. p. 356

Where the removal of structures, erected by one of two adjoining owners on a right of way reserved for use by such owners, would injure the owner who erected it to an extent wholly disproportionate to the benefit which might enure to the other owner from such action, a mandatory injunction will not be issued at the suit of the latter to compel the removal of such structures. p. 357

The owner of land to which there is appurtenant a right of way over adjoining land cannot convey a right of way for railroad purposes to a stranger without any interest in the land, this involving an additional servitude on the adjoining land. p. 358

*Decided January 25th, 1922.*

Appeal from the Circuit Court for Anne Arundel County, in Equity (FORSYTHE, J.).

Bill by The Texas Company against The United States Asphalt Refining Company, and The Chesapeake & Curtis

Bay Railroad Company, for specific performance and an injunction. From a decree for defendants, plaintiff appeals. Affirmed in part and reversed in part.

The cause was argued before BOYD, C. J., THOMAS, PATTISON, URNER, ADKINS, and OFFUTT, JJ.

*Frank Gosnell,* with whom were *Marbury, Gosnell & Williams* and *Nicholas H. Green* on the brief, for the appellant.

*J. Cookman Boyd,* for the appellees.

URNER, J., delivered the opinion of the Court.

The Texas Company and the United States Asphalt Refining Company, both incorporated, are the owners of adjacent tracts of land on the northern shore of Curtis Bay. The properties are used for the purposes of the manufacturing and oil refining enterprises in which the two companies are respectively engaged. Between the tracts thus owned and used is a strip of land twenty-five feet wide which extends to a pier projecting into the waters of the bay to the south. This narrow area is a reservation contributed equally from the lands of the adjoining owners and intended for their use in common for the purposes of railway sidings and wagon roads. An extension of the right of way northwardly from the Texas Company's land to South Street lies wholly on the land of the United States Asphalt Refining Company, which will be referred to hereafter as the Asphalt Company. Another reserved area, for the same uses in common, extends across the two tracts at right angles with the strip first mentioned. Prior to the present ownership of the properties they belonged as a whole to the Ellis Company. On September 11, 1916, that corporation conveyed to the Texas Company a portion of the land together with the eastern half of the pier projecting into Curtis Bay from the land retained by the grantor. It was covenanted in the deed that the entire pier should be subject to the joint and equal use of the parties to the conveyance and their successors in the

title. It was further "mutually covenanted, granted and agreed" that the areas already described should be reserved and used jointly and equally by the parties, and their successors and assigns, for the purposes we have indicated. On October 23, 1911, the Ellis Company conveyed its retained portion of the tract to the Asphalt Company, subject to the covenants of the deed to the Texas Company.

In the course of the use in common of the reserved area, certain difficulties developed, and in February 1915, while the two corporations were endeavoring to compromise some litigation then pending between them in reference to a contract for the sale of oil, the question of readjusting their interests under the right of way covenants was brought within the scope of their negotiations. An agreement was reached and final settlement effected in regard to the subject of the litigation. Whether there was a definite and complete agreement with respect to the right of way is the principal question involved in the present suit. The correspondence of the companies on the subject was conducted between their New York offices.

It was proposed by the Texas Company that the right of way be abolished, except the portion extending northwardly from its property and affording it an outlet in that direction, and except so much of the southern portion as would be needed to provide access to the pier. The suggestion was that, with the exceptions just noted, the land embraced within the limits of the right of way should revert to the adjoining owners in the same equal proportions in which it had been contributed for its use in common, or that a new division line be established. In a letter dated February 24th, 1915, from the Texas Company to the Asphalt Company, after reference to the negotiations for a settlement of the suit then pending, it was said: "With regard to the division of the portion of the properties of the two companies at Curtis Bay used in common, we propose that the parties execute mutual releases covering the property reserved for common use, with the exception of the pier, slips adjoining,

and a small area at the head of the pier; we to release the portion of this common area which you own in fee, and you in like manner to release the portion which we own in fee; or if it seems more convenient, a revised dividing line to be drawn; the essence of the matter being that we should each own in fee up to this dividing line, the arrangement about the pier and the small portion of land at the head of it to remain as at present."

To that letter the Asphalt Company replied, under date of February 26th, 1915, making a counter proposal in regard to the terms of compromise of the litigation, and stating in reference to the right of way adjustment: "Also we will agree to the division of that portion of the property of the two companies at Curtis Bay, in use in common, with the exception of the pier, slips adjoining the pier and the small area at the head of the pier. This probably can best be accomplished by drawing a revised dividing line and each company executing releases of their joint rights of the use of the property now used in common."

This was followed on March 1st, 1915, by a letter from the Texas Company to the Asphalt Company, in which the understanding of the former company as to the result of a conference held that day between representatives of the two corporations was stated to be that the litigation between them was to be discontinued by mutual consent, and that the companies should release each other from the covenants relating to the use of the reserved areas, except as to that portion lying north of the Texas Company's property and that part lying south of a point about midway between the pierhead and the Asphalt Company's warehouse, "the exact location to be mutually agreed upon." It was suggested in the letter that if the Asphalt Company preferred to provide a right of way fifteen feet wide over its property to the north, for the exclusive use of the Texas Company, in lieu of the existing one twenty-five feet wide devoted to their use in common, a substitution of that nature would be satisfactory. There was the further suggestion that a corrugated iron fence without

openings be erected along the entire western line of the Texas Company's property, and a woven wire fence along its northern line, each company to pay half the cost of the fencing. Included in the settlement, as the letter stated, was the purchase by the Asphalt Company from the Texas Company of 100,000 barrels of crude oil at a stipulated price. These terms were restated without change in a letter from the latter company to the former dated March 2nd, 1915, and on the same day the Asphalt Company replied as follows: "We are in receipt of your favor of even date outlining the basis upon which the matters pending between us are to be settled. We hereby accept the arrangement of settlement and also approve the form of contract for the purchase of 100,000 barrels of Mexican crude oil, as enclosed by you. We return same with our acceptance noted thereon and would be obliged if you would mail us a duplicate copy with your signature. We have informed Mr. Newman to arrange with Mr. Stevens, representing your company, to prepare the necessary form of the general releases in the pending litigation. Mr. Blymer, at this office, will take up with Mr. Stevens the matter of the readjustment of the property rights of each company at Curtis Bay. Mr. Blymer will communicate with Mr. Stevens by telephone and arrange a convenient meeting."

There was an exchange of letters on the third and fourth of March in regard to a proposal of the Texas Company that specifications be prepared and bids obtained for the fencing to be erected on the northern and western lines of its property, and it was agreed that designated representatives of the companies should "arrange the details along the lines" suggested.

No further steps appear to have been taken towards a settlement of the question relating to the right of way until February 9, 1916, when Mr. Stevens, of the Texas Company, wrote Mr. Blymer, of the Asphalt Company, stating that an agreement was reached between the companies early in March, 1915, "for a division of their properties at Curtis Bay," and enclosed two blue prints presenting alternative

plans for accomplishing that result. "Our people," said Mr. Stevens, "would be glad to have this matter concluded as soon as possible; and to that end I would be very glad to meet you at any time if you think our working the matter out of the agreements out together would facilitate such conclusion." Mr. Blymer answered on February 11, referring to his receipt of the two proposals "for the revised boundary line," and stating that the matter was being taken up again for consideration, and as soon as it was "far enough advanced for a conference," he would act upon Mr. Stevens' suggestion that they together work out the details. In reply to a letter of March 13th, 1916, from Mr. Stevens, inquiring when the matter could be closed, Mr. Blymer wrote, on March 13th, that his company did not see how the division outlined by Mr. Stevens could be made without "blocking the exit of the Asphalt Company over its right of way leading south and east." Replying to that letter Mr. Stevens said that the result objected to was one of those clearly contemplated in the agreement that a corrugated iron fence without openings should be erected along the entire western line of his company's land. To this Mr. Blymer replied that his company did not agree with Mr. Stevens as to the effect of the previous negotiations, and that the matter had been referred to the company's attorney, by whom the further correspondence in its behalf on the subject would be conducted. There were subsequent communications between the representatives of the companies, directed chiefly to the question as to whether the negotiations in February and March, 1915, had resulted in a definite agreement as to the division of the right of way. The correspondence having failed to harmonize the opposing views upon that vital point, the present suit was instituted by the Texas Company in January, 1917, for the purpose, in part, of enforcing the specific performance of the terms of division upon which it claims there was in fact an agreement.

It is evident that an agreement was reached by the representatives of the two corporations as to some important details of the right-of-way division which had been pro-

posed. It was agreed that, as to the greater part of the right of way, the companies should be mutually released from the covenants in their deeds as to its use in common, and that along its center line, which was the western line of the land owned by the Texas Company in fee, a corrugated iron fence should be erected. There was the further agreement that to the north of the Texas Company's property the existing right of way twenty-five feet wide should be maintained, unless the Asphalt Company should prefer to substitute one fifteen feet wide over its own land for the former company's exclusive use. But with respect to the new limits of the southern portion of the right of way near the pierhead no agreement was ever concluded. The provision excepting that area from the proposed division expressly reserved the question as to its extent for an agreement which has not yet been effected. It is clearly shown by the record that the "exact location" of the line "to be mutually agreed upon" as the northern boundary of the area of access to the pier has not been determined. The line was to be "about midway" between the pierhead and the Asphalt Company's warehouse, but its exact location was evidently regarded as a subject of sufficient importance to require further consideration in connection, no doubt, with a special inspection of the premises.

The agreement sought to be enforced is, therefore, incomplete. It was being negotiated as an entire agreement, and its provisions are not separable. It was intended to accomplish a property division as to an essential element of which the parties have manifestly failed to agree. The court has no authority to supply that deficiency. It has neither the right nor the ability to decide where the northern limit of the right of way to the pier should be located. That was a subject which the parties reserved for their own decision by mutual agreement, and we have no more power to complete their unfinished contract than we would have to make one for them in its entirety. A court of equity will not undertake to specifically enforce an agreement unless it is definite

and certain in all its provisions (*Phœnix Pad Mfg. Co.* v. *Roth,* 127 Md. 540; *Thompson v. Thomas & Thompson Co.,* 132 Md. 483), and the agreement relied on fails to comply with that requirement.

The bill of complaint also sought relief by way of mandatory injunction aganist the alleged violation, by the Asphalt Company, of the covenants relating to the right of way, through the erection thereon of certain structures, including a wall around a pit containing oil pipes of the two companies. The evidence leads to the conclusion that the improvements to which the bill refers were made with the assent of the Texas Company, and that they have not materially interfered with its use of the right of way for the purposes of its business. It appears that pipe lines of both companies, for the conveyance of oil to and from their plants, are located within the right of way, and that its use has been appropriate to the special objects of their respective enterprises. The structures mentioned in the bill have been erected for a number of years and are indispensable for the operation of the Asphalt Company's plant. Their enforced removal would injure that company to an extent wholly disproportionate to the benefit which might enure to the plaintiff from such action. The case, therefore, does not present conditions justifying a mandatory injunction for the purposes stated in the bill. *Smith* v. *Myers,* 130 Md. 64; *McDowell* v. *Biddison,* 120 Md. 118. There is no proof of any proposed obstructions as to which relief by injunction is required.

The Chesapeake & Curtis Bay Railroad Company was made a defendant in the case, because the Asphalt Company executed a deed to it on March 16th, 1916, attempting to convey certain rights of way for railroad purposes over part of the land appropriated to the use in common of the plaintiff and the Asphalt Company, and in which the plaintiff owned the fee, and it was alleged that the railroad company was making use of the easement in violation of the plaintiff's rights. A preliminary injunction had the effect of restrain-

ing that user, but by the decree appealed from the injunction was dissolved. To that extent we are unable to concur in the decree. The use of the right of way by the railroad company under the deed referred to would be an additional servitude of which the plaintiff, as owner of the fee, may rightfully complain. It would be an appropriation of private property for the use of the railroad company without just compensation being first paid or tendered. The easement which the Asphalt Company's deed purported to convey to the railroad company was not appurtenant to the land for the benefit of which the right of way under the plaintiff's deed had been created. The deed to the railroad company did not convey to it the fee in any part of the land in connection with which the pre-existing easement had been used. It was not competent for the Asphalt Company to convey an equal right in the easement to a grantee without proprietary interest in the soil to which it is appurtenant. 9 *R. C. L.*, 802; 19 *C. J.*, 938; *Redemptorists* v. *Wenig,* 79 Md. 348; *Albert* v. *Thomas,* 73 Md. 181. Consequently, the injunction should not have been dissolved, but should have been made permanent, as to the use by the railroad company of the right of way conveyed to it by the Asphalt Company, in so far as that user may affect the plaintiff's land and its appurtenant easement.

The decree will be affirmed with respect to its refusal to grant the specific performance and mandatory injunction prayed by the bill, but it will be reversed and the case remanded in order that the preliminary injunction, for the purpose we have indicated, may be made permanent.

> *Decree affirmed in part and reversed in part, and cause remanded to the end that a decree may be passed in accordance with the opinion of this Court, the costs to be paid in the proportions of one-half by the appellant and one-half by the appellees.*