LEWIS HURWITZ ET AL. *vs.* FRANK E. BUCK.

*Mandatory Injunction—Disproportionate Injury to Defendant—Restoration of Wall.*

The fact that defendant, in violation of a contract made by his predecessor in title, had, while altering a wall of his building, in part destroyed plaintiff's signs thereon, did not justify the issue of a mandatory injunction which would compel defendant to replace bricks which he had removed while inserting a door and a window in the wall, and to repaint plaintiff's signs thereon, in view especially of the fact that plaintiff's rights as to the use of the wall had but two months longer to run, since such an injunction would involve to defendant injury far greater than the benefit to plaintiff.

*Decided April 17th, 1925.*

Appeal from the Circuit Court of Baltimore City (FRANK, J.).

Bill by Frank E. Buck against Lewis Hurwitz and Benjamin Pugatch. From a decree for plaintiff, defendants appeal. Reversed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, PARKE, and WALSH, JJ.

*Robert Biggs* and *Simon E. Sobeloff,* for the appellants.

*Jacob S. New* and *G. Ridgely Sappington,* with whom were *Baldwin & Sappington* on the brief, for the appellee.

PATTISON, J., delivered the opinion of the Court.

One Granville O. Wilson was, on and prior to the 11th day of December, 1918, the owner of the properties known as Nos. 102 and 104 Clay Street and 218 North Liberty Street, Baltimore, Maryland. The Clay Street building is of the shape of a flat iron, and though it does not extend to Liberty Street, the point of it approaches, on the east, within about ten feet of it.

The Liberty Street property is immediately on the north-west corner of Clay and Liberty Streets and for the distance of about ten feet, extending westward, it binds with Clay Street, but from that point it is bounded on the south by the Clay Street property, which lies between it and Clay Street.

That part of the Liberty Street building binding upon Clay Street was, at the time mentioned above, a blank wall. Upon it were advertising signs of the appellee, Frank E. Buck, who at such time, as lessee of Wilson, occupied the Clay Street property as a ladies' boot and shoe shop. The signs mentioned could be readily seen for some distance there-from by persons going north on Liberty Street, while the Clay Street property could not be seen until Clay Street was nearly reached.

Buck had been tenant of the Clay Street premises since 1916, and it was during the period of his occupancy, prior to the 11th day of December, 1918, that he placed these signs upon the side wall of the Liberty Street building, as the record discloses that none were placed thereon after that date. Under what terms and conditions these signs had been placed upon the wall is not shown. There was upon the wall, in addition to the signs of the appellee, a sign of the "Marinello Shop" for facial and scalp treatment.

On the said 11th day of December, 1918, Wilson, the owner of both properties, leased the Clay Street premises to

Buck, upon the terms and conditions shown by the following lease:

> "This Agreement, Made this 11th day of December, 1918, between Granville O. Wilson, landlord, and Frank E. Buck, tenant, witnesseth that the said landlord hereby rents to the said tenant the four-story building known as No. 102 and 104 Clay Street for the term of five years with the privilege of renewal for the term of five years at the same yearly rental of $1,200, beginning on the first day of January, 1919, and ending on the thirty-first day of December, 1923, at the sum of one hundred dollars a month payable monthly in advance. And the said tenant hereby covenants with the said landlord to pay the rent as aforesaid * * * And it is also further agreed that this agreement with all its provisions and covenants shall continue in force from term to term after the expiration of the term above mentioned provided however that the parties hereto or either of them can terminate the same at the end of the term above mentioned or any term thereafter by giving at least sixty days' previous notice thereof in writing. The landlord further agrees that the tenant shall have the right to place signs on the south wall of No. 218 N. Liberty Street provided they do not interfere with those already there. The landlord further agrees that tenant shall have the right to sublet any part of said building. In testimony whereof the said parties have hereunto subscribed their names and affixed their seals the day and year first above written.
>
>            "Granville O. Wilson. (Seal)
>            "Frank S. Buck.      (Seal)
>            "Mrs. Frank Buck.    (Seal)
> "Test: Irving Buck."

In June or July, 1920, Wilson sold and conveyed the Liberty Street property to the appellant, Hurwitz, and one Hoffman and, in October of the same year, Hoffman sold his interest therein to Hurwitz, since which time Hurwitz has been the sole owner of the property. It is conceded that

Hurwitz did not have actual knowledge of the lease at the time the property was acquired by him.

It appears from the evidence of the appellee that in the spring of 1921, painters, sent there by the appellant, came to the Liberty Street property to paint the building. The appellee seeing them there, asked them what they were going to do, and they told him they had come to paint the building, and when he asked them if they were going to paint the whole building they said, "Yes." Then he asked them, "How about the signs on the south wall?" and they said, "We are going to paint over them." He then told them "to paint on the front of the building on Liberty Street, but that the side walls belonged to me." Immediately thereafter, he called on his counsel, Mr. New, and they at once went to see Mr. Hurwitz. Mr. Buck testified that Mr. New showed Mr. Hurwitz the lease, and told him that "he could not touch the wall, and if he did, there would be some trouble in reference to it." Mr. Hurwitz replied, "What, me buy the building and don't get the wall?" This, as far as the record discloses, was the first actual notice that Hurwitz had of the lease or the provision it contained as to the alleged right of the appellee to place signs upon the side wall of the building purchased by him. The wall upon which the signs were placed was not then painted, but in the summer of 1923 Hurwitz decided to make certain changes and improvements in the building, including the removal of the door on Liberty Street to the corner of the building on Clay Street and the insertion of a window in the side wall on the last named street, also the painting of the entire building, and to do this he employed one Pugatch.

These improvements and changes necessitating a removal of part of the side wall, which displaced some of the signs thereon, gave rise to the filing of the bill in this case, by the appellee, on the 9th day of August, 1923, asking, first, that Hurwitz and Pugatch be restrained from proceeding with any work on the south wall of the building that would in any way interfere with the plaintiff's sign or signs thereon; second, for an injunction permanently enjoining them from

the doing of the said acts, and, third, for a mandatory injunction requiring the defendants to replace the brick work in said wall removed by them, and to restore and re-paint the sign thereon "just the same as they were before said walls were mutilated and destroyed" by said defendants, "the signs to be of the same size, color, design and workmanship as the ones" so removed by said defendants.

The defendant Hurwitz answered the bill, and evidence was thereafter taken, and upon the bill, answer and evidence so taken, a decree was passed, requiring the defendant Hurwitz, as prayed in the bill, to restore the wall and the pictures thereon which had been removed, "destroyed and mutilated by him."

It was from the above mentioned decree that the appeal in this case was taken.

There was no restraining order passed enjoining the defendants or either of them from proceeding with the work on the south wall of the Liberty Street building pending the proceedings, but, as stated by the learned court below, all the acts, to prevent the doing of which a prohibitory injunction was asked for, had been fully done and performed by the defendants prior to the hearing of the case.

The provision in the above mentioned lease gave to Buck "the right to place signs on the south wall of No. 218 North Liberty Street," provided they did not interfere with those already there. It is shown from the record that the right so conferred was never exercised by him. There were, however, at the time of its execution, signs thereon advertising his business, placed there by him while occupying the Clay Street building under a prior lease or rental, but there was still considerable space upon the wall where signs could be placed. It was claimed by Buck that he had spent considerable money in advertising through the papers, in connection with the signs upon the wall, to establish the location of the business conducted by him.

In the insertion of the window and door the signs upon the first story of the wall were removed or obliterated, but

those upon the second and third stories, which could be more readily seen when approaching the building, were still intact; except that in the case of a vertical sign upon the extreme east side of the wall near the corner of the two streets extending from the roof of the building nearly to the ground, the lower words of it—"Buck's Ladies Shoes"—were obliterated.

The permission to place signs upon the wall did not necessarily carry with it the right to use for such purpose the entire wall, or, by the arbitrary exercise of that right, to prevent the owner from making reasonable and necessary changes and improvements to the building. If Hurwitz unlawfully infringed upon the rights of Buck in doing what he did, such wrongful acts, and the injury to Buck resulting therefrom, did not, we think, warrant the granting of the mandatory injunction requiring the defendant Hurwitz to restore the wall to the condition in which he found it, which not only necessitates his destroying practically all of the improvements he has made, but will require him to replace the bricks in the wall from which they had been taken in order to insert the door and window therein, as well as to repaint the signs thereon. This should not be required of him, especially in view of the fact that at most Buck could only have enjoyed the right conferred upon him so long as he remained a tenant under said lease or a proper renewal of it. If his tenancy ended with the expiration of the original lease, then such right ceased to exist in January, 1924, before the case reached this Court on appeal, and only two months after the passage of the decree. As stated by the court below in its opinion, there had been no renewal of the lease at the date of the decree.

The decree in this case is in effect one to enforce the specific performance of an agreement not at all definite in its character, and not made with the defendant against whom it is sought to be enforced. Upon these and other facts we have mentioned, the court, we think, erred in granting the mandatory injunction.

As said by Judge Urner, speaking for this Court in *Smith v. Myers*, 130 Md. 67, a case similar to the one before us:

"A suit for an injunction which seeks to accomplish all the purposes of a decree for specific performance is subject to the principles which apply to an application for the latter remedy and it is a settled rule that specific enforcement of an agreement will not be decreed when, as in this case, the injury to the defendant would be far greater than the benefit which the plaintiff might derive from that result.   *McDowell v. Biddison,* 120 Md. 127; *Phoenix Pad Co. v. Roth,* 127 Md. 543; *Linthicum v. W., B. & A. Elec. R. Co.,* 124 Md. 272; *Whalen v. B. & O. R. R. Co.,* 108 Md. 23; *Fralinger v. Cooke,* 108 Md. 688."

From what we have said the decree will be reversed without prejudice to the plaintiff to institute a suit at law to recover the loss claimed by him resulting from the alleged acts of the appellant, but in so doing, we are not to be understood as expressing any view as to his right to recover therein.

> *Decree reversed without prejudice to the appellee as stated in the opinion, the appellee to pay the costs.*