GEORGE G. SCHNEPFE *v.* CONSOLIDATED GAS
ELECTRIC LIGHT & POWER COMPANY
OF BALTIMORE CITY.

[No. 44, January·Term, 1933.]

*Decided March 21st, 1933.*

The cause was argued before BOND, C. J., PATTISON,
URNER, ADKINS, OFFUTT, PARKE, and SLOAN, JJ.

*George G. Schnepfe,* for the appellant.

*Alfred P. Ramsey,* with whom was *E. M. Sturtevant* on
the brief, for the appellee.

PATTISON, J., delivered the opinion of the Court.

On the 16th day of June in the year 1908, William G.
Miller and Elijah F. Miller, owners of a farm in the second

election district of Baltimore County, executed unto George G. Schnepfe, the appellant, and three others, a mortgage upon said farm to secure an indebtedness of $8,500.

On October 28th, 1926, Elijah F. Miller and Jesse N. Miller, the then owners of the farm, conveyed unto the appellee, the Consolidated Gas Electric Light & Power Company of Baltimore City, a public utility, a free and uninterrupted right of way of the width of sixty-six feet over the farm "for the purpose of erecting and maintaining thereon an electric transmission line, including the necessary towers, wires and attachments."

At the time of such conveyance, the appellee sought to obtain a partial release of the mortgage heretofore mentioned, which at that time had been reduced to $4,000, but the appellant refused to execute the release.

After obtaining the grant from the owners, the appellee, with the full knowledge of the appellant, proceeded to erect the transmission line without any further effort to obtain a partial release from the mortgagees, and without instituting condemnation proceedings against them, thinking that the mortgage would soon be paid.

On July 7th, 1932, the farm was sold under the mortgage by one Chester A. Albrecht, to whom it had been assigned by the mortgagees, including the appellant, for the purpose of foreclosure; and at that sale the appellant became the purchaser "at and for the sum of three thousand dollars ($3,-000.00)", an amount insufficient to pay the mortgage debt, interest, and cost.

On July 29th, 1932, the appellant filed his petition alleging that he was the purchaser at the sale, and the sale was so reported, but it had not, at that time, been ratified. He also alleged the execution of the grant by the owners of the farm, conveying to the appellee the right of way above mentioned, and that he, at that time, was asked by the appellee to execute a partial release, but refused to do so because, as stated in his petition, the rights conveyed to the appellee by the owners were for an indefinite time, and the grant contained no provision for a payment by the grantee of a "reasonable

proportion of the taxes" upon the property; and further "that the high voltage current could not be used by the people over whose property the transmission line passed." It was further alleged in the petition that the appellee, after obtaining such right of way, "affixed to the freehold, four towers bearing signs reading: "Danger, High Voltage, Keep off"; and that upon these towers cables "were suspended across the farm near its center." From the last of these towers the cable was suspended to the tower on the adjacent property "making an angle of thirty-four degrees from a straight line, the whole being part of a zigzag transmission line across the country." The petition then alleged that, after purchasing the farm under the mortgage foreclosure proceedings, the appellant informed the appellee "that the sending of dangerous electric current over the farm was a trespass on" his rights and prevented him "from enjoying the full possession of his property"; and he requested that "assurance be given by the Company that the transmission of dangerous electric current would be stopped"; that the appellee replied "that it could not give the assurance requested and that the transmission line must remain." The petitioner then alleges that he did not know what damage might be done "to the property in the future by the maintenance of the transmission line and the sending of dangerous high voltage electric current across the farm."

Upon these alleged facts, the petitioner prayed (1) that he be made party to the mortgage foreclosure proceedings; (2) that "the ratification of the sale be postponed"; (3) that after hearing on the petition a permanent injunction be issued "enjoining and restraining" the appellee "and its employees from being a party to the deliberate and dangerous transmission of high voltage electric current across the farm"; (4) "that a reasonable attorney fee be allowed" the petitioner, and that the appellee "be ordered to pay same," as well as the cost resulting from the company's refusal to discontinue the transmission line across the appellant's property; and (5) for general relief.

On August 26th, 1932, the appellant filed a second petition in which he alleged, among other facts, that through inadvertence his first "petition was not marked filed," and no entry of it was made on the docket; that the docket showed that the sale was finally ratified and confirmed on August 9th, as a result of the omission to file the petition. It was not known to the petitioner that such sale had been ratified and confirmed until about the time of the filing of his last petition; and he asked that his petition of July 29th be filed and entered on the docket as of that day, and that the ratification and confirmation of the sale be rescinded. An order was passed upon the petition directing the petition of July 29th to be filed as of that date and rescinding the ratification and confirmation of the sale.

On August 27th, 1932, the court passed an order upon the appellant's petition of July 29th, by which the appellee was made a party to the mortgage foreclosure proceedings and was directed to answer the appellant's petition.

Thereafter, on the 29th of September, 1932, the appellant filed his third petition, in which he alleged many of the allegations of the petition of July 29th, and asked for the ultimate ratification and confirmation of the sale.

The appellee both demurred to and answered the petition. In its answer it admitted the erection of a transmission line upon the right of way granted to it by the owners of the land; and also the cutting of some timber, of little or no value, which was made necessary in the erection of the line; but denied that the line was near the center of the farm, and alleged it was on the extreme western side of it. And it alleged that from the time of its erection in 1925 until July, 1932, no complaint was made by the appellant regarding the presence of said transmission line upon the property, nor did he request that it be removed.

The answer admitted that the appellee asked the appellant to execute a partial release of the mortgage at the time of the grant of the right of way by the owners of the farm, but he refused to do so. It also admitted that the appellant wrote to the appellee "requesting cessation by the latter of its trans-

mission of electric energy across the said property" and that it refused to do so, as the line was "essential to the service of electric energy to the public in large portions of Baltimore County and adjacent counties," but it "then offered and has since stood and now stands ready to purchase, if necessary, from the holder of the legal title to such land, a right of way for said transmission line, but the plaintiff has consistently refused all offers to negotiate a settlement." The answer then avers "that the granting of the injunction as prayed would disrupt the indispensable service of electric energy" by it "to the public in large portions of Baltimore County and adjacent counties, which great detriment to the public would not be compensated for by any comparable benefit to the said plaintiff; that the maintenance of the said transmission line * * * until the perfection of title to said land" in the appellant "or some other person" or until the appellee "may then purchase or condemn any necessary right of way therefor, will not in any degree affect the utility of said land for any purpose to which it is adapted," or "will not work any irreparable injury to the plaintiff."

The plaintiff offered no evidence; but the defendant offered evidence as to the character and construction of the transmission line, its location, and the necessity therefor in transmitting electric energy to the public in Baltimore County and adjacent counties.

At the conclusion of the testimony, the court, on November 14th, 1932, passed its decree, ordering and decreeing that the petitions of the appellant "save in so far as they pray the ratification and confirmation of the sale of the property described in the proceedings in the above entitled cause, which sale was made and reported to this court * * * be, and the same are hereby dismissed with costs to the Petitioner."

This court, speaking through Judge Parke in *Baltimore & Philadelphia Steamboat Co. v. Starr M. P. Church*, 149 Md. 180, 130 A. 46, 52, said: "A mandatory injunction is issued with extreme caution, and is restricted to cases where adequate redress at law is not afforded, or where the injury

is not compensable in damages, and in weighing the propriety of its issuance, the court will take into consideration the relative convenience and inconvenience which would result to the parties from granting or refusing this relief. *Texas Co. v. U. S. Asphalt Co.,* 140 Md. 350, 117 A. 879; *Linthicum v. Wash., B. & A'. Elec. R. Co.,* 124 Md. 263, 92 A. 917; *McDowell v. Biddison,* 120 Md. 118, 87 A. 752; *Smith v. Myers,* 130 Md. 64, 99 A. 938."

Speaking for this court in *Smith v. Myers, supra,* Judge Urner said: "A suit for an injunction which seeks to accomplish all the purposes of a decree for specific performance is subject to the principles which apply to an application for the latter remedy, and it is a settled rule that specific enforcement of an agreement will not be decreed when, as in this case, the injury to the defendant would be far greater than the benefit which the plaintiff might derive from that result. *McDowell v. Biddison,* 120 Md. 127, 87 A. 752; *Phoenix Pad Co. v. Roth,* 127 Md. 543, 96 A. 762; *Linthicum v. W., B. & A. Elec. R. Co.,* 124 Md. 272. 92 A. 917; *Whalen v. B. & O. R. R. Co.,* 108 Md. 23, 69 A. 390; *Fralinger v. Cooke,* 108 Md. 688, 71 A. 529." See *Hurwitz v. Buck,* 147 Md. 566, 128 A. 750.

Judge Burke, speaking for this court in *McDowell v. Biddison, supra,* quoted with approval the language used in *McCutcheon's Heirs v. Rawleigh* (Ky.), 76 S. W. 50, 51, where it is said: "If to enforce specifically an agreement would do one party great injury and the other but comparatively little good, so that the result would be more spiteful than just, the chancellor will not require its execution."

It is disclosed by the evidence in this case that, if the the appellee company was required to remove the transmission line, consisting of towers and cables, as prayed in the appellant's petition, the expense and injury to the appellee would be wholly disproportionate to the benefit which might inure to the appellant. In addition thereto, the granting of the injunction as prayed would cause serious public inconvenience without a corresponding advantage to the appellant. In this case such fact justified the refusal of the injunction

and the dismissal of the petitions. *Howard v. West. Md. Ry. Co.,* 138 Md. 49, 113 A. 574.

As stated in 32 *Corpus Juris,* 81: "On an application for an injunction it is the duty of the court to take into consideration the injury or inconvenience which may result to the public in case an injunction is awarded. * * * The weight of authority is to the effect that when the issuance of an injunction will cause serious public inconvenience or loss, without a correspondingly great advantage to the complainant, no injunction will be granted."

Without discussing or passing upon other reasons urged against the granting of the injunction, the reasons stated are, we think, sufficient to sustain the action of the court below. The decree will therefore be affirmed.

*Decree affirmed, with costs.*