## REALTY IMPROVEMENT COMPANY *v.* CONSOLIDATED GAS ELECTRIC LIGHT & POWER COMPANY.

[No. 68, October Term, 1928.]

*Decided February 15th, 1929.*

584

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Walter C. Mylander;* with whom was *Nathan Patz* on the brief, for the appellant.

*Edwin M. Sturtevant,* with whom was *Noah E. Offutt* on the brief, for the appellee.

BOND, C. J., delivered the opinion of the Court.

The questions to be considered arise in a proceeding instituted by the Consolidated Company to condemn an easement for a line of steel towers and electric wires over a strip of land southwest of Baltimore City, extending along the east side of the tracks of the Washington, Baltimore & Annapolis Electric Railroad northwardly from the crossing of the Patapsco River. The landowner, the Realty Improvement Company, appeals from the award and judgment for compensation.

A motion to quash the proceeding was made by it upon three grounds. First, is the ground of a lack of authorization by the Public Service Commission; and as to that, it is to be observed that the statute concerning authorizations for extensions by gas or electric corporations in force at the time of the institution of this proceeding (Acts 1927, ch. 338; Code, art. 23, sec. 390), provides that the permission or approval of the commission shall not be necessary for any extension within territory already served by the utility company, necessary or desirable in the ordinary course of business. And the record contains a certificate, issued in the name of the commission in response to an application by the company, that this extension was interpreted by the commission as coming within that description, within territory already actually served, and that therefore no permission or approval was required. The appellant denies the propriety of including this work, a line of steel towers and wires encircling Baltimore City to bring and distribute current from the Susquehanna, as a mere extension of existing serv-

ice within the meaning of the statute cited, and the facts seem to permit some question on the point; but the commission, with better knowledge of the actual service than the record affords, has decided that the work is such an extension, and we see no sufficient reason for taking another view, if the question is one proper for consideration here. The appellant still contends, on the first ground for his motion, that the company nevertheless failed to comply with the statutory prerequisite of filing its application for permission of the Public Service Commission before beginning the condemnation proceedings. The application was filed eleven days after. But if the work is an extension in territory already actually served, as certified, there was no prerequisite of application, permission, or approval at all. The fact that there was no formal hearing on the application, and that the chief engineer of the commission signed the certificate, afford no ground of objection that we can see, for there are no requirements of law to the contrary. This first ground of the motion we therefore find untenable.

A second ground is a lack of any showing, in the original petition and in the evidence, of public necessity for the construction for which the land is being condemned. But there is no obligation on the condemning corporation to include such an allegation in its petition. Code, art. 33A, sec. 1; *Hyattsville v. Washington, W. & G. R. Co.,* 120 Md. 128. And the explanation of purposes given in the testimony is to the effect that this line is to serve sections of Baltimore County with light and power, which will clearly be of utility and convenience to the public, and which cannot otherwise be so economically provided; and such an advantage to the public is sufficient for a finding of the requisite public necessity for the exercise of the power of eminent domain. "It is enough if it clearly appears that the application of such private property to the proposed new use will be attended by a material public benefit which would not otherwise be so immediately and effectually produced." *Bellona Company's Case,* 3 Bland, 442, 451. *New Central Coal Co. v. George's Creek Co.,* 37 Md. 557, 560; *Webster v. Susque-*

*hanna Pole Line Co.,* 112 Md. 416. This ground of the motion we find likewise untenable.

As to the third ground, a lack of authority from the condemning corporation itself to its officers who initiated the proceedings, assuming that the landowner can make an objection on that ground, the by-laws of the corporation, introduced in evidence, give sufficiently broad power for this to the president of the corporation, and the record contains a subsequent express ratification of this particular condemnation proceeding in a resolution of the executive committee of the corporation. And the whole project is clearly shown to have been one decided upon and initiated by the corporation. There is no basis for a finding of lack of authorization of the company's agents and attorneys. The motion was properly overruled.

Objection is made in this court to the continuation of the proceeding below with eleven jurors, by consent of counsel for both parties, after one juror had been disabled by sickness on the second day of trial. Upon the authority of decisions in other jurisdictions, it is argued that a trial with eleven jurors is not the trial by jury required by the general provisions for condemnation proceedings in Code, article 33A. We believe it to be the settled view in this state, and certainly it is a view long followed in practice, that civil cases, if not criminal cases, too, may be tried by consent of the parties with a number of jurors less than twelve. And irrespective of the weight of authority elsewhere, which seems to be in accord with this view, we see no sufficient reason for holding that a trial must be before a jury of twelve throughout a trial, despite all imaginable accidents, and despite the wishes and convenience of the parties concerned. There are strong reasons of convenience to the contrary. The appellant urges that his consent to continuing with eleven jurors should not be treated as voluntary, or as an actual consent, because for tactical reasons he would not dare to insist upon termination of the trial and beginning afresh before another jury of twelve; but that is a compulsion for which a court can make no allowance, and is a tactical choice

rather than compulsion. The court can have only the word of counsel to go on, and must assume that he consents when he says he does. We disagree with the contention on this point.

There is an exception to the exclusion of a question asked on cross-examination of a witness for the company. An expert on real estate values, after he had given his opinion on the possible uses of the property over which the easement is to be taken, and its value, denying that this particular land had any value for industrial development, was asked by counsel for the landowner, the appellant, whether it was not a fact that the value of industrial land ranged anywhere from $2,500 to $10,000 per acre. And counsel explained that it was asked for the purpose of testing the witness' knowledge of industrial land. The court excluded this question, and we think rightly did so. It is not clear to us how it could serve to test the witness' knowledge of industrial land. But the chief vice in it would, we think, lie in its possible effect to produce testimony from the witness seemingly on the assumption that it was industrial land, of a value within this range, that was being talked about, which he denied. It would be an improper question to put to this witness because of its tendency to produce from him testimony which he did not mean to give, and which was not his testimony. And whatever its purpose, a question so framed that it may have that effect is properly excluded in the exercise of the court's discretion.

Finally, an instruction to the jury, granted at the request of the company, on the method of estimating the compensation to be awarded the landowner, is excepted to on two grounds. "By market value," it read, "is meant the price which would be agreed upon at a voluntary sale between an owner willing to sell and a purchaser willing to buy." And it is objected that this is an incomplete and erroneous definition, because it fails to lay down as a test the ability as well as the willingness of the parties to deal. But the familiar references to sellers and purchasers willing and able to effect a sale are explanations of the legal measure of just

compensation rather than the measure itself. The legal measure is the market value. 2 *Lewis, Eminent Domain,* sec. 706. And it is not always necessary to give a jury an explanation or definition of it. In *Baltimore v. Rice,* 73 Md. 307, 311, an instruction to find merely the "fair market value" was regarded by this court as covering the whole question at issue. And in *Marchant v. Baltimore,* 146 Md. 513, 527, in which a definition of market value was given, it was given in the words of the instruction in the present case, without reference to the ability of the parties, and the court found it unobjectionable, duly recognizing and reasonably defining the landowner's rights with respect to the award of damages and the considerations by which it could properly be governed. And however necessary or desirable it may be in some cases that the question of the ability of the parties be considered in ascertaining the fair market value, we cannot say it was so in this case.

A further objection to the instruction is that it, in effect, directs the jury to deduct the value of benefits to accrue from the new use, in fixing the compensation to be paid to the landowner for what is to be taken. There is some uncertainty in the wording of the instructions given on the measure of damages. Only a clearly defined and limited easement is being condemned and in the instruction now objected to, the jury were directed to find the market value of the property before the taking and the market value after (and apparently to allow the difference), and in addition to allow any consequential damages suffered by the portion of the tract remaining after the taking. In the argument in this court, counsel for both sides viewed the instruction as referring to values of the whole tract belonging to the landowner, and presumably it was so discussed before the jury and understood by them. We think that in this case, in which the easement is to be taken over a narrow strip, to which it might actually be difficult to give a separate independent valuation, the instruction so understood gives a fair measure of compensation.

Where a part of a tract or parcel of land is taken by eminent domain the owner is entitled to receive as an irreducible

compensation the actual value of what is taken whether it be the fee or an easement, and this compensation may be accurately and practically measured, in cases in which the property taken is not readily and fairly susceptible of separate independent valuation, by the difference between the fair market value of the entire tract or parcel without the taking and its fair market value after such taking, excluding the effect of the future corporate use of the parcel taken. In addition to this value, which the owner is entitled to be awarded by the jury in any event, the jury is bound to allow the consequential damages, if any, to the remainder of the tract or parcel after the taking by reason of or in consequence of the future corporate use and enjoyment of the part so taken, but such consequential damages are to be diminished to the extent of the particular benefits, if any, to the remainder of the tract or parcel arising from the future corporate use of the part taken as contradistinguished from the general benefits in which the remaining property of the owner would share with the other contiguous land in the neighborhood of the public utility and of the owner. These benefits the landowner does not object to. He objects to the possibility that the instruction might lead the jury to allow the general benefits shared with the other land. But this court concludes that the objection is not a substantial one. While a specific direction to exclude these benefits might have been desirable in order to insure against misconception, all the discussion at the trial was on the allowance of values without benefits, and the likelihood of misleading the jury in this respect seems negligible. In answer to questions on cross-examination whether the construction of the improvement would not damage the remaining property, two witnesses for the corporation did say that on the contrary property might conceivably be benefited, but we think that insufficient to render the instruction so inadequate and erroneous as to justify a new trial of the issue for correction.

*Judgment affirmed, with costs to the appellee.*