## MARJORIE R. PERKINS *v.* STATE ROADS COMMISSION OF THE STATE HIGHWAY ADMINISTRATION

[No. 1762, September Term, 1982.]

*Decided October 6, 1983.*

The cause was argued before GILBERT, C. J., and LOWE and LISS, JJ.

*R. Edwin Brown,* with whom was *John R. Clapp* on the brief, for appellant.

*Henry F. Leonnig, Assistant Attorney General-Special Counsel,* with whom were *Stephen H. Sachs, Attorney General,* and *Nolan H. Rogers, Assistant Attorney General,* on the brief, for appellee.

LOWE, J., delivered the opinion of the Court.

Marjorie R. Perkins, who appeals the judgment of the Circuit Court for Prince George's County, owned a piece of property which lay between parallel highways; the Capital Beltway (I-495) and St. Barnabas Road (Md. Rte. 414). Because access to the Beltway was denied, the property could be entered only from St. Barnabas Road, along which Ms. Perkins owned 172 feet. There was, however, an alley which appellee refers to as a "paper public alley" perpendicular to St. Barnabas Road and adjoining appellant's property for approximately 180 feet but ending short of reaching I-495.

As part of a Beltway access improvement plan, the State through its Roads Commission, proposed a semicircular access ramp between the Beltway and St. Barnabas Road. This necessitated the taking of a substantial strip of appellant's land along the entire border of the Beltway, and more pertinently here, two small pieces from the St. Barnabas Road end of her property which reduced her accessible frontage there from 172 feet to 138 feet. The State also had closed or intended to close the "paper public alley" which ran from St. Barnabas Road for 180 feet along appellant's property line at the corner from which the State had taken the parcel that reduced appellant's access to St. Barnabas Road. Also, apparently as part of this program, St. Barnabas Road was to become a divided highway which would provide direct access to appellant's land for traffic going only in one direction.

— reduction of damages by benefit

to the remainder —

Initially appellant complains that:

"The trial court erred in failing to instruct the jury that it must determine whether the remainder received a general or special benefit by virtue of the condemnation and of the law relating to general and special benefits."

Not only are we unable to find where appellant objected to such failure to instruct, as required by Md. Rule 554 d, but we find that the issue was not relevant for consideration by the jury in light of other instructions given in the case. Appellant requested

"the Court to instruct the jury that she will not in any manner benefit from this condemnation, and therefore, in arriving at the damages the jury is to take into consideration no benefit whatsoever."

But that request is a far cry from asking a jury to determine which type of benefit appellant received from the condemnation.

More significantly we note that the judge on three separate occasions instructed the jury that it should exclude from its damages determinations *any* increment in value to the remaining land caused by the public improvement. Even if appellant had asked for an instruction that the jury should determine which type of benefit appellant received (which is only relevant in reducing her damages), she is far better served by the instruction that *no* enhancement or benefit from the improvement could be considered in the before and after the taking evaluation of appellant's property.

Appellant's authority that some instruction on the special vs. general benefits is required is only apposite when the jury is instructed that damages may be reduced by the value of the benefit of the improvement to remaining land. Even then an appellant must have complied with Md. Rule 554 d [1] as is clearly set forth in Md. Rule 554 e.

"Upon appeal a party in assigning error in the instructions, shall be restricted to (1) the particular portion of the instructions given or the particular

---

1. "If a party has an objection to any portion of any instruction given, or to any omission therefrom, or the failure to give any instruction, he shall before the jury retires to consider its verdict make such objection stating distinctly the portion, or omission, or failure to instruct to which he objects and the ground of his objection. Opportunity shall be given to make the objection in open court out of the hearing of the jury upon application either orally or in writing, made before or after the conclusion of the charge."

omission therefrom or the particular failure to instruct distinctly objected to before the jury retired and (2) the grounds of objection distinctly stated at the time, and no other errors or assignments of error in the instructions shall be considered by the appellate court."

— enhancement of damages by diminished
access to remainder —

Obviously chagrined with the amount of damages allowed her, Ms. Perkins next complains that:

"The trial court erred in ruling that evidence of damage to the remainder caused by the diminution of access on St. Barnabus [sic] Road and total loss of access on a preexisting public alley was inadmissible."

Appellant again seeks to raise an issue where none was raised or preserved below. The record is obscure as to whether evidence was offered or excluded regarding damages to Ms. Perkins' remaining property caused by a diminution of access to St. Barnabas Road.

A far more troublesome and substantially related issue *was* preserved when the court excluded the elimination of the "paper public alley" as an item of compensable damages. Initially, we note that appellee's appellation of the alley as a "paper public" one is not clarified by brief or extract, but is obviously intended to cause us subconsciously to denigrate the significance of the issue. We will not be so suggestively persuaded.

Because of the facts of this case, the issue is not as clear cut as either party would have us believe. The problem arose when, relying upon *Goldstein v. City of Baltimore,* 273 Md. 85 (1974), the judge sustained an objection by the State

"that evidence concerning the denial of access to the 18 foot wide alley is not relevant to these proceedings . . . ."

The rule of *Goldstein,* distilled by Judge Singley from myriad cases was that:

"Because Maryland Constitution Art. III, § 40 provides that compensation must be paid for private property taken for public use, and not for damage or injury to such property, in the absence of statutory relief, there ordinarily can be a recovery when access to a public street is destroyed, but not when access is simply limited or regulated . . . ." 273 Md. at 89.

Appellant contends that there is a distinction between the *Goldstein* rule and the cases from which it was distilled, and the case at bar. She points out that in all the Maryland cases [2] which support the *Goldstein* rule, there was no concomitant taking of the landowner's property. The distinction is set forth by appellant in a quotation from *Nichols on Eminent Domain,* Vol. 2A, § 6.45 (Rev. 3d ed. 1981).

"There is a distinction, however, to be noted between the assessment of compensation in the case of a taking and in the case of a damage when no land is taken. In the former case the mere fact that there has been a taking entitles the owner to recover for all damages to his remaining land, whether special or shared by the public generally, *provided they flow from the taking,* since he is constitutionally entitled to be made whole for all injuries *resulting from the taking of his land;* but when there is no taking he is entitled only to such damages as the constitution or statutes provided, and as the damages usually provided for are held to be only those which are special and peculiar, the mere fact that an owner is entitled to recover such damages is no ground for allowing damages of a different character, although resulting from the construction of the same work." (Emphasis added).

---

**2.** Although appellant and appellee both rely on and discuss out-of-state cases, the Court of Appeals has often warned against the practice in this area. See, *e.g.,* Krebs v. State Roads Comm., 160 Md. 584, 588 (1931).

From this appellant seemingly concludes that while the closing of a street by the sovereign does not create a cause of action for a property owner with other access, such a closing may be considered as an element of damages if a concomitant taking gives rise to a cause of action.

We think that is too broad a distinction even as distilled from the *Nichols'* quotation. The *Nichols'* predicate, as emphasized by us, accords with the fine distillation of Judge Singley in *Goldstein.* As seen from his single sentence rule: for a denial of access to fall within the constitutional right to compensation, that which is compensable must amount to or result from a *taking,* whether actual or constructive. Phrased differently, the damages for which an owner is entitled to be compensated are restricted to those which "result" or "flow from the taking", not merely from the public purpose or project giving rise thereto. The closing of the alley to effectuate the ramp project then, is not of itself a compensable limitation of access because the damage (limitation of access to the alley) may not have arisen from the *taking* of property owner's land, but rather from the closing. In this case, however, there is no evidence that the alley had ever been closed or was to be closed, only an assumption that it would be closed.

There was an additional factor in this case further shading the faint line drawn by *Goldstein.* Not only did the taking consist of the entire southeastern perimeter adjoining the Beltway, but there was also a smaller western corner of the property taken as well. This corner reduced appellant's access to St. Barnabas Road from 172 feet to 138 feet; it also reduced what would have been 180 feet frontage on the alley to 86.93 feet, had the alley not been closed. Assuming, as the parties and court below did, that the alley was to be closed, there is then a question whether the loss of that 93.07 feet [3] of what would have been alley frontage access but for the closing was a compensable damage which flowed or resulted from the *taking* of the land of appellant, or whether it was

---

3. These figures were taken from appellant's exhibit #1.

(like the 86.93 feet remaining portion of the alley) a loss arising solely from the closing (assuming it was to be closed for project purposes). Since the alley closing and the taking of appellant's land were assumed to have been part and parcel of the same project and intended to effect an attendant purpose, whether the loss of public alley access along the condemned portion was the result of the taking of appellant's land or of the closing of the public alley, would be a factual consideration properly submitted to the jury, but certainly not one or the other as a matter of law. Why and when the State chose to close the alley is significant. Underlying that determination is the factual consideration whether the alley closing would even have been contemplated had the project not required the taking of the Barnabas road-alley corner of appellant's property. To hold otherwise would permit the State to reduce substantially the often costly front footage damage of condemned land by simultaneously closing the public way upon which the land is situate and not have to compensate an owner of remaining land for the diminution of its value by so limiting its access.

Moreover and more particularly, as the judge instructed repeatedly, the measure of damages was the difference between the fair market value of the whole property immediately before the taking and its fair market value immediately after the taking. Md. Real Prop. Code Ann. § 12-104; *Oxon Hill Rec. Club v. Pr. Geo's Co.,* 281 Md. 105, 107-108 (1977). If the fair market value before the taking included the 93.07 feet frontage on the alley taken by the State, and did not include it after the taking, it is a relevant damage consideration to be submitted to the jury.

Conceptually the judge was correct in ruling that the denial of access to a closed alley was not admissible as damages. See *Johnson v. Gas & Electrical Co.,* 187 Md. 454, 473 (1947), holding that consequential damages to remaining land does not include its diminution of value caused by the acquisition and use of adjoining lands of others for the same undertaking. But the precise question to which the objection

raising the conceptual contention was posed simply asked the State's expert whether he had considered at the time of his appraisal that the property had 180 feet of frontage on the alley.

> "Q. All right, sir. Mr. Fincham, are you aware or were you aware when you made your appraisal that Mrs. Perkins' property had 180 feet of frontage on an 18-foot wide dedicated public alley or street?
>
> MR. LEONNIG [counsel for plaintiff/appellee]: Objection, Your Honor. May we approach the bench?"

The question was a proper one. Whether an appraiser considered that appellant had 180 feet frontage on the alley before the taking and, but for the contemporaneous closing, would have had only 86.97 feet after the taking is just as "relevant" a consideration as whether he considered appellant's 172 feet frontage on St. Barnabas Road before the taking and only 138 feet after it. Because the court did not permit that distinction in sustaining the objection, ruling that *any* denial of access to the alley was not relevant, we must reverse the judgment and remand the case for retrial. We cannot say that its exclusion did not cause appellant "substantial injustice". *State Roads Comm. v. Adams,* 238 Md. 371 (1965). Perhaps that which caused confusion was the failure of both parties to produce evidence of that which they knew or assumed to be a fact. Except for the plats showing the alley and some testimony alluding to it there was no evidence to indicate its derivation or its physical existence,[4] hence the appellant description of a "paper public alley". One knows it exists from testimonial allusions as well as its designation on the plat but whether it is physically usable or from whence it came is a mystery.

More mysterious, perhaps, is the blind acceptance of the crucial fact that it was closed, or to be closed; an assumption

---

4. Apparently its existence would not have been apparent to the jury upon site visitation either.

upon which this entire controversy is founded. Even without evidence of its closing, however, the court erred in rejecting evidence that an expert did or did not consider that the property had bordered an alley along which the State had condemned a portion. By the formula for damages repeated by the court, such fact was clearly relevant in that the value of the whole before the taking contained substantially more alley frontage than after the taking. Only if there had been evidence that the alley had been closed prior to the condemnation for a reason not anticipating the taking would such evidence not be a proper consideration.

In order to avoid controversy on remand similar to the other issues raised here, we have answered, and will answer, the other issues raised. Our conclusion above, however, provides adequate guidance regarding appellant's complaint that:

> "The trial court erred in striking the testimony of the landowner's expert appraisal witness relating to severance damages and in instructing the jury that it was to find that there was no damage accruing to the remainder."

Appellant simply repeats her argument that her expert should have been permitted to have testified upon the closing of the alley as an element of severance damages and that the jury was entitled to consider it as such resulting or consequential damages. As we have pointed out the error was in not permitting exploration of whether the appraiser had considered the frontage of the land actually taken but it was not error to preclude testimony of what damage the overall closing did to the property. That land actually taken adjacent to the alley is an element or consideration relevant to the fair market value of the part taken and is relevant and admissible as it affects the before and after evaluation. See *Johnson, supra* at 469-470. It is a damage directly resulting from the taking. It is not a consequential damage "by reason of . . . the future use by the plaintiff of the part taken." Real Prop. § 12-104 (b). The record is obscure in this area as well,

but we find the judge did not err in so instructing the jury; nor did he err in striking the expert's testimony as to *severance* damages which related to the alley closing and the dividing of the boulevard. *Goldstein, supra; Turner v. State Roads Comm.,* 213 Md. 428 (1957).

The two final questions raised relate to the restrictions placed upon appellant's own testimony. Not only was she permitted to testify to the value of her property but the court instructed the jury that this was proper to consider.

> "Under the law of Maryland an owner of real estate, regardless of his or her expertise, is permitted to give his or her opinion as to the value of that real property. However, the weight you give that testimony is for you to decide."

She complains now that she was not permitted to support her evaluation by testifying to her knowledge of comparable sales and that she was precluded from addressing "the damage sustained by the remainder of her property by virtue of the condemnation."

The short answers are that she admitted not having any knowledge of the comparable values regarding the former complaint [5] and that she was never asked her opinion of the remaining property's after-take value. The question she was asked appeared to address resulting or severance damage requiring some degree of expertise or special knowledge to be established as a foundation, *Oxon Hill Rec. Club, supra* at 109.

---

[5] "Do you have any knowledge, ma'am, of the value of the real estate in the area of your property other than your property? Other properties?

THE WITNESS: No, I don't. I expect it runs around five dollars a foot or something on that account.

THE COURT: You say you do not or you do?

THE WITNESS: No.

THE COURT: You do not.

MR. LEONNIG: Object and move that that answer be stricken and the jury instructed to disregard it.

THE COURT: Motion granted. When she testifies she expects that, that is not admissible and I strike that answer and tell you not to consider it.

THE WITNESS: Well, I don't know.

THE COURT: All right."

Q. Mrs. Perkins, in your judgment will the remainder of your property suffer any damage in value by reason of this condemnation?"

If appellant intended to elicit an after-take evaluation as she now argues, she should have clarified the question or explained its purpose to the judge. As it appeared the judge did not err in sustaining the objection.

*Judgment reversed.*
*Case remanded for retrial.*
*Costs to be paid by appellee.*